The next case is 21-050609, Noble Capital Fund Management v. U.S. Capital Global Investment. Mr. Hudson. May it please the Court, Judge Higginbotham, Judge Owen, and Judge Elrod, thank you for your time and attention today and for granting the party's request for our argument. My name is Murray Hudson, I represent the appellant, U.S. Capital Global Investment Management, LLC, who I will refer to throughout this argument as simply U.S. Capital. The appellees are represented by Mr. Hopkins here today, there are three entities, because the issues are the same, I will be referring to them in the argument as simply Noble Capital or Noble. Also, at the onset, I have reserved five minutes of my time for rebuttal. Respectfully, the lower court's order affirming the magistrate's report, the recommendation should be reversed, and Noble's complaint against U.S. Capital dismissed with prejudice. Alternatively, a stay issued by the district court should be granted until Noble either refiles its arbitration claims against U.S. Capital and then complies with its arbitration obligations. There are two reasons for these outcomes. First, the lower court's conclusion that U.S. Capital requested the arbitrations be terminated is erroneous and unsupported. It did not. There is no competent substantial evidence in the record to indicate that. In fact, the only evidence in the record on the issue is to the contrary, that evidence being the motion filed by the fund to have Noble pay its arbitration fees or alternatively dismiss the fund's claims against Noble only. It did not ask for relief indicating at all that the entire arbitration proceeding should be terminated, nor did U.S. Capital participate in that motion in any way. That mistake, however, led the court to its second error, and that error is that it held U.S. Capital in default of its arbitration obligations because U.S. Capital did not pay the Noble Capital's fees and sought arbitration, erroneous conclusions, and it did not apply the same analysis to the Noble entities. U.S. Capital did not pay the arbitration fees of the fund. Neither did Noble. That's undisputed. The JAMS order that terminated the arbitration proceedings was very clear. It terminated the arbitration proceedings because none of the parties paid the fund's fees. The JAMS order did not single out U.S. Capital. It applied to all of the parties. Close to $100,000, Your Honor. Close to $100,000, Your Honor. So by not applying the same analysis to the Noble entities as it did to U.S. Capital, it caused error because according to JAMS, and in its order of dismissal, it's very clear. JAMS applied Rule 6c of the JAMS rules. That rule states that JAMS has the authority to either suspend or terminate proceedings if the parties do not pay their fees. It also refers very specifically to Rule 31c of its own rules. Rule 31c is clear. All parties are jointly and severally liable for the arbitration costs of all the other parties. Had Noble, had the court applied the same analysis to Noble as it applied to U.S. Capital, it would have held Noble in default of its arbitration obligations because Noble did not pay the fund's fees. It terminated the arbitration for reasons, specifically because of that. None of the parties paid the fees. If it's been, if it was in fact terminated, regardless of why it was terminated, doesn't that mean that the arbitration has been had? Yes, and completed. And then you don't get, are you asking us to create a circuit split with the 9th, 10th, and 11th circuits? No, absolutely not. If we go back and make a stay and go back to arbitration, it seems like that we would be creating a circuit split. Can you help? I'm asking the court to be absolutely consistent with those circuits. It's the lower court, the erroneous fact findings that led it down this wrong path that led to this result. If it had made, if it had made findings of fact that were consistent with the evidence, it would have concluded, it would not have concluded that U.S. capital requested termination. Because if a party requests termination in arbitration proceedings, certainly it would be denied the opportunity to argue later. What relief do you seek? I think of the dismissal of Noble's complaint with prejudice. Alternatively, if the court is not inclined to do that, a stay that would allow that arbitration to be resumed because U.S. capital has not defaulted in its obligations. But I think the primary result here is a dismissal of the Noble complaint with prejudice, exactly as you said, because the arbitration has been had. Noble didn't pay the fees as it was obligated to do. And the failure to pay those fees caused prejudice to U.S. capital because it took away U.S. capital's right to arbitrate his claims that he agreed to in his contracts. According to even Noble's brief, that is consistent. In Noble's brief on page 35 through 36, it points out two cases, the cases you're referring to, the Cota case and also the Freeman case, where they hold that it is not the fact that you don't comply with the obligation to pay, it's the fact that you had an opportunity to pay and failed to pay in order to keep the arbitration alive that renders you in your arbitration agreements. And then the magistrate was correct when she relied on Tillman. We cite Tillman. Noble cites Tillman. The footnote in the Tillman case at the end of the case is very clear that unless there's a justification such as financial hardship, as was the case in that case, for not paying your fees, a court, and therefore the arbitration is dismissed or terminated, the court should dismiss the ensuing case outright with prejudice. And that's what should be done here. In other words, as you've referred to, Judge Elrod, that case has been had. They had their bite at the apple. They could have paid the fees. Not only could they have paid the fees, but they could have asked for recoupment of the fees at the end of the case. That's in the jams rules. And they had another opportunity that U.S. Capitol did not. The fund's assets that were left after the noble entities had gone into the fund and divested it of over $21 million in the eve of the preliminary hearing, there was assets left, about $500,000, frozen by the jams panel, subject to the discretion of noble and the jams panel, the arbitration panel. Noble could have stipulated to use those fees to pay the fund's costs and ask jams to do so. They made no such effort. It's highly unlikely that if they had done that, that jams would have said, no, you can't do that. U.S. Capitol couldn't do that. U.S. Capitol had the freeze order. The fund was filing the motion to get out of the arbitration because it had lost control of all of its assets. So, yes, I believe you're absolutely right, and it would be consistent with all of the case law to terminate the, to dismiss that complaint with prejudice. The arbitration's been had. Okay. So, the other thing is just an alternative argument about stay and go to arbitration. Correct. That shouldn't throw us off from the main argument. Because if the district court didn't make that error at the get-go and it analyzed both U.S. Capitol and noble's role in the arbitration vis-a-vis the payment of the fees, it would have realized that U.S. Capitol had justification for not paying the fees of the fund, and U.S. Capitol's failure to pay the fees of the fund did not prejudice noble. On the other hand, it would have realized, as I've stated, noble had the obligation to pay the fees, had an opportunity to pay the fees, had another opportunity to get the fees paid by stipulating to the use of the fund's assets. And certainly noble's conduct and its failures did prejudice U.S. Capitol because it denied U.S. Capitol that arbitration. And here we are, it wants to start over with the same claims, the same case in a district court four years after they initiated the arbitration in the first place. What do we do with the motion to transfer venue, the ruling on that, how is that intertwined with this? Your Honor, in all candor, I believe we don't get there. I think the case in the lower court gets dismissed with prejudice and or the arbitration gets reengaged and that issue becomes moot. However, the argument made by noble that there's no jurisdiction there, the issue on the venue choice of law that's in the contracts, that's part of the agreement that's at issue. Noble's arguing that those agreements were void because they were allegedly fraudulently induced so if any court or any arbitrator is going to make a decision regarding the that choice of law clause and there's the inextricable relationship between all of the issues in this case and the venue issue. There's no public... Can I just... I'm sorry to keep going back to this, but I just want to make sure I understand. No, no. I understand. The denial of the motion to compel arbitration and stay, you're not challenging that then. I mean, you agree that... No, we are challenging that because... But I mean, you agree that there shouldn't be a motion to compel arbitration... What the court did not do is it did not dismiss Noble's complaint. Right. That should have been done and it focused solely on the stay issue with the unfounded belief and conclusion that noble, I mean, that U.S. capital was acting through the fund and that the fund's actions were the same actions as U.S. capital. We're not supposed to grant a motion to compel arbitration and stay. We're not supposed to send it back for that. We're supposed to say it should be dismissed completely. And so to the extent that the compel arbitration was... That's all alternative argument. Yeah, that's all alternative and you disagree with the way that the district court got there, but you don't think it should be compelled arbitration either. On other reasons, correct? Yes, other reasons. Neither you nor the district court's judgment says it should go to arbitration. Let me put it this way. If you do not dismiss their complaint with prejudice, I believe that the stay should be granted because U.S. capital did not default and therefore Noble should take its chances back at the arbitration. The district court determined that U.S. capital was in default because it, quote, acted through the fund. Correct. The fund is a Delaware Limited Partnership under LPA. Yes. Now, the capital as a general partner then has a sole and excluded right to manage, control, and conduct the business of the partnership. So here you have a fund under the sole control of capital that brings claims against arbitration against Noble in California. So why wouldn't one defer that to U.S. capital cause the arbitration termination by causing the fund's involvement? Because U.S. capital is wearing two hats in that arbitration, Your Honor. First of all, it was a respondent, the only respondent, defending itself against the claims brought by Noble. In that capacity, the best way to articulate the distinction between the role of U.S. capital as a respondent and the role of U.S. capital as the general partner of the fund is that as a respondent, it's defending itself. As the general partner of the fund, it's acting on behalf of and consistent with the best interests of the fund. The fund cannot, as a corporate fiction, it cannot act in and of itself. It can't make its own decisions. So U.S. capital had to make decisions as the general partner of the fund with a different set of interests and obligations. What's in the best interest of the fund? And then had to make decisions as a respondent, being sued by Noble and only by Noble, and what's in the best interest of it in defending itself. The fund made a decision after the divestiture of funds and assets, the fund made a decision to ask that Noble pay its fees or to release it so it could go back to the forum from where it came from with its claims. U.S. capital could not pay those fees, although it had an obligation to according to JAMS rules, yes, and an opportunity to do so. It could not pay those fees because by doing so, it would have acted inconsistent and contrary to the fund's interest. I thought capital would be liable for the obligations of the fund as its general partner. And the fund made a business decision, Your Honor, to ask that. It made a business decision, but that doesn't distance you from what tanked the arbitration. The fund's decision was to ask that Noble pay or to release it. The general partner made that decision on behalf of the fund. U.S. capital as a respondent could not make a decision to pay the fees without contradicting that decision. You're obligated to the fund's unmet obligations. If that's true, you're obligated to pay the fund's arbitration. And it's a relevant point to note that those invoices were deposit requirements. They weren't invoices for services performed or whatnot. The final hearing in that matter for which those deposits were going to be applied to was scheduled for January of 2021. The fund filed its motion in August of 2019, about a month after it received the last deposit. So in recognition of the deposit, the fund made the decision, we have no control over our assets at all. It's subject now to the hostile party's discretion and a jams panel. We want either they pay or we want out. And we will go back and litigate our case and deal with it that way. U.S. capital couldn't do anything contrary without creating a conflict which was a Hobson's choice for itself. And it chose to act in the best interest of the fund rather than in its own best interest. What was a Hobson's choice? The Hobson's choice was act in its best interest to defend itself and keep that arbitration alive or act in the best interest of the fund and allow the fund's motion to proceed where the fund requested Noble to pay the fees or to remove itself from the litigation. Either way, it couldn't win. Between the two of you, you were similarly situated with regard to whether the arbitration was going to go on. No, because the fund had no assets and the control of its remaining assets was subject to the discretion of Noble as well as the arbitration panel itself. I think I understand your argument. I'm past my time. I appreciate all of your questions. Thank you. Thank you, Your Honors. Good morning. May it please the Court. We believe this is a straightforward issue. The JAMS rules, as the panel just heard, allow for termination of arbitration proceedings. That is what happened in this case. JAMS terminated the arbitration. There is no arbitration left. Appellants present the Court with no authority that would permit judicial... They claim they're not responsible for that termination. I understand that, Your Honor. I would submit that it is immaterial why the arbitration was terminated. It doesn't matter, Your Honor. There is no arbitration to refer this dispute to. It has been terminated. It's an academic question. Now, the trial court explained why it was terminated. That was the default of, in the trial court's determination, U.S. capital. But I would submit that it doesn't matter why. The motion to refer this case to arbitration had to have been denied because there was no arbitration to refer the case to. Now, as to the default, Judge Higginbotham, you're absolutely right. The general partner of the fund had the obligation to pay those fees. It didn't do it. But what's been glossed over a little bit here is the fact that the fund had half a million dollars in the bank. That was the whole point of the TRO application in the district court. So there was money there to pay these fees. It was a calculated decision. There was no Hobson's choice. It was a calculated business decision not to pay those fees because the fund wanted to litigate its claims in court while preserving the arbitration over the claims between Noble and the fund's general partner. That choice was a business decision, as Mr. Hudson said, but it came with consequences. And the consequences was the default of the U.S. capital parties and, therefore, the termination of the arbitration. One more point on the default issue. Mr. Hudson said, well, you know, Noble had this obligation to pay, so it was in default. There are two points there. There's no authority, at least that I've been able to find, that requires a defendant in arbitration proceedings, a respondent, to pay fees to support litigation against it. The cases Mr. Hudson relies on are when a plaintiff in an arbitration proceeding doesn't pay the fees. Well, then, okay, that arbitration can be dismissed. But there is no default on behalf of a respondent when it doesn't pay. You don't have to pay to allow someone to sue you. More to the point, the default analysis is applicable to the party seeking the stay under the Federal Arbitration Act. Here that was U.S. capital, not Noble. It doesn't matter whether Noble was in default for its fees. It wasn't, because Noble paid all the fees that were assessed to Noble. But even if it hadn't, the issue of default is on, is applicable to the party seeking the stay. I heard just now, I think for the first time, Mr. Hudson say that the remedy that he actually seeks is dismissal with prejudice of claims that have not been adjudicated to final judgment, whether in arbitration or in court. That is an extraordinary remedy that I did not see in the briefs. I don't know how he thinks he can get there. There is a difference between an arbitration being, having been had, and claims being finally adjudicated. The first part of that has happened here. The second part has not. So these claims, they exist. They're out there, and until they're decided either by an arbitration panel or by a district court, those are live claims. So I respectfully submit that there's no basis for dismissal of these claims. The question really is, should they proceed in arbitration? And as I said, they can't proceed in arbitration because there is no arbitration. So with that, unless the panel has questions, I'll yield back my time. Thank you. Two points, very briefly, because I went past my time before. Counsel said that there's no case authority where a defendant has to pay fees in order to allow himself to continue to be sued. We absolutely agree. My client, U.S. Capitol, is the defendant in this case from the claims that were initiated by Noble in the arbitration. Counsel also made reference that he hasn't seen any of the briefs, a request for dismissal. It's in our brief, page 31, our initial brief, at the lower part that carries over until page 32. And it also, again, on page 33, the conclusion is, therefore, NCFM, that's Noble, and the feeder funds, that's the other party, should be barred completely from pursuing their claims in the district court. That's our initial brief. He just said that Noble paid all the fees that were assessed on Noble. Can you, what? No, the JAMS rules, it's Rule 6C again. Each party gets paid, gets billed for their pro rata share, and Noble, he says that they paid their fees. Okay, but the order that dismissed the proceedings refers to Rule 6C. Rule 6C incorporates Rule 31C. Rule 31C of the JAMS rules is very clear. All parties are jointly and severally liable for the arbitration costs of all parties. That's where the obligation comes in to pay the other party's fees. And the rule goes on to state that there's a mechanism there to get recoupment at the end of the arbitration from the arbitrator, either as a set off or as a part of an award, an additional part of an award. And that's the case law that they cite in their brief. The Coda case and the Freeman case cite it in page 35 through 36 of their brief. Excuse me? In your view, where is this case? We don't have an arbitration in that one. The case is over. They can't relitigate claims that they had an opportunity and failed to proceed with in arbitration. They should be completely denied ability to relitigate those claims in a district court and in any court. Why? Because they had the opportunity and they defaulted on their obligations under the arbitration agreement. If we don't have an arbitration, I agree with it. It's not there. I don't see any issue preclusion of principles of that sort by referring to arbitration, which fails. They clearly abandoned the right to arbitrate those claims by not paying those fees. Perhaps so, but then what? Did he proceed it as a court with a compulsive? No, because then any party could do that. Any party who's subject to an arbitration agreement could just sit there and say, you know what? We're not going to pay our fees. Or we're not going to pay the fees of a third party and then, you know what? We get to go and restart over in district court. That would be an abhorrent decision. If it went to continue with the arbitration, then you could have paid the fees. You say you weren't obligated to, which you could have. U.S. capital could have, and in doing so, it would have been inconsistent with its obligation and roles at the general partner of the fund. So with that, you walk. Excuse me? So with that, you walk away from the claim. I find that hard to follow. Your Honor, Noble Cabell had the same opportunity and the same obligation to pay the fees. My difficulty is that, OK, you're not in arbitration. The dispute here between the parties is litigated, you know, until the Supreme Court fell in love with arbitration. We've probably tried these cases. You report a lot of that simple resort. Well, this is a unique case. There's no case like it in precedent case authorities throughout the country. I would refer you, Judge Higginbotham, respectively to the footnote in the Tillman case where it addressed what would happen, what should happen in this scenario. Thank you very much.